LAMM et al. v. PARROT SILVER & COPPER CO. et al.

(Circuit Court, D. Montana. October 23, 1901.)

No. 154.

REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—SUIT BY STOCKHOLDERS.

A suit by stockholders of a corporation against such corporation and a second corporation, which, the bill alleges, has, through an unlawful combination, obtained a controlling interest in the first, and by virtue of such control has managed its business to the detriment of its stockholders, and for its own benefit, and where an injunction is prayed restraining the payment of dividends by the second corporation until an accounting has been made, is one in which the complainants in effect represent their corporation, and which involves a separable controversy as to the second corporation that entitles it to remove the cause where the other facts requisite to give a right of removal exist; and officers of the two corporations made defendants with a prayer for an accounting from all the defendants are merely formal parties, whose joinder does not defeat such right of removal, where no facts are alleged which entitle the complainants to relief against them as individuals.[1]

On Motion to Remand to State Court.

McHatton & Cotter, Jas. M. Denny, and W. C. Jones, for plaintiffs.

A. J. Shores, for defendant Amalgamated Copper Min. Co.

KNOWLES, District Judge. This case was commenced in the district court of Silver Bow county, Mont. On the petition of one of the defendants, the Amalgamated Copper Company, a corporation alleged to have been organized under the laws of the state of New Jersey, the cause was removed to this court from said state court. The grounds of said removal were that the defendant Amalgamated Copper Company was and is a citizen of the said state of New Jersey, and that, although there were other defendants, the bill presented a separable controversy. Complainants have now come into this court, and moved that this cause be remanded to the state court on the ground that the contention of said defendant Amalgamated Copper Company as to a separable controversy is not correct. This is the question presented to this court for solution. The plaintiffs, it is alleged, are stockholders in the Parrot Silver & Copper Company, a corporation organized under the laws of Montana. On the ground that the said Parrot Silver & Copper Company has passed under the control of the said Amalgamated Copper Company, and certain wrongs have been done in regard to its rights and property, this suit is brought by said plaintiffs. In effect plaintiffs represent the Parrot Company. They have the right to maintain this action only because the said company, being under the control of the Amalgamated Company, will not protect itself. The rights that they seek to protect are the rights of the said company. Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815. The machinery and ore

[1] Separable controversy as ground for removal of cause, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Mineral Co., 35 C. C. A. 155.

alleged to have been taken were the property of the company, not the property of the individual plaintiffs, who are only stockholders in the company. Upon an examination of the bill we find that complainants set forth:

"That the defendants, with others, not named, combined to form and create a trust or monopoly for the purpose of controlling and monopolizing the production and sale of copper and other metals in the United States and throughout the world; and in pursuance of such unlawful and malicious conspiracy, confederation, and combination said defendants organized a corporation under the laws of New Jersey, under the name Amalgamated Copper Company, having a capital stock amounting to seventy-five million dollars ($75,000,000)."

The articles of incorporation are then set forth. Complainants then allege that in furtherance of said conspiracy and combination "said persons caused said Amalgamated Copper Company, either directly or through the agency of a trustee, to purchase a majority of the capital stock of this defendant corporation (the Parrot Silver & Copper Company), which said stock the said Amalgamated Copper Company now owns and controls. Said persons also procured said Amalgamated Copper Company to purchase all of the shares of the capital stock, except organizing shares, of the following corporations, to wit: The Washoe Copper Mining Company, the Colorado Smelting & Mining Company, the Diamond Coal & Coke Company, the Big Blackfoot Milling Company, the Hennessy Mercantile Company." It is also alleged that said persons procured said Amalgamated Company to purchase and become the owner of large amounts of the capital stock of the Boston & Montana Consolidated Copper & Silver Mining Company. What was the object of making these allegations? They are either immaterial, or they were made with a view of attacking the right of said Amalgamated Company to purchase, own and control the said stock in the said Parrot Company. This is a controversy in which the said Amalgamated Company and plaintiffs, as the representatives of the Parrot Company, are alone interested. If the Parrot Company has any interest in this controversy, it is not with the Amalgamated Company. It has no interest in maintaining the contention that said Amalgamated Company had a right to purchase, own, and control its stock. It is set forth in the bill:

"That shortly after the said Amalgamated Company became the owner of a majority of the capital stock of the defendant the Parrot Silver & Copper Company, and thereby secured the management and control of said defendant company, the directors, acting in conjunction with the Amalgamated Copper Company, caused the concentrating and smelting plant of said defendant company, situate at Butte, as aforesaid, and the refining plant of said company, situate at Bridgeport, Connecticut, to be closed down, and partially dismantled, and caused part of the machinery of said concentrating and smelting plant to be removed from Butte, and placed in reduction works of another corporation, to wit, the Anaconda Copper Mining Company, situated at Anaconda, Montana, and caused a useful, convenient, and facile shaft, necessary to the honest and economical working and development of the mines of said defendant company, * * * to be abandoned; and since said date, either directly or through the agency and connivance of officers and directors of said Anaconda Copper Mining Company, have caused large quantities of ore of great value to be taken from the mines of the defendant company through shafts and workings of said Anaconda Copper

Mining Company, and shipped over the railroad of said Butte, Anaconda & Pacific Railway Company to the smelters and reduction works of said Anaconda Copper Mining Company, at great expense of freight, hauling and handling, and then to be reduced, smelted, and treated at an expense greatly in excess of the amount which it costs or would cost said company to smelt and reduce and treat its said ores at its own works in Butte, and in excess of any reasonable or proper charge; and plaintiffs allege that they are informed and believe that said ores so taken from the mines of defendant company aforesaid were never sampled or weighed properly or sufficiently, or at all, and that no true or sufficient account was ever kept by said defendant, or any one, of the ores so taken."

Here we find charges against the Amalgamated Company in which the Parrot Company is interested only as against the said Amalgamated Company. It should be observed that the Anaconda Copper Mining Company is not made a party to this bill. This should be considered in viewing the prayer for an accounting in the bill. Turning now to the prayers in said bill, and we find it asked:

"That the defendant the Amalgamated Copper Company, its officers, directors, and trustees, be enjoined from paying any dividends from moneys obtained from the defendant Parrot Silver & Copper Company, or from any of the stockholders thereof, or from any stock of said company held by them in trust or otherwise, until it be ascertained what amount of money obtained by the defendant the Amalgamated Copper Company from the Parrot Silver & Copper Company, or by any corporation controlled by said Amalgamated Copper Company, for the extraction of ores, or for the smelting, concentrating, or refining the same, and which were taken from the property of the defendant Parrot Silver & Copper Company, and which was in excess of the lawful charges for such purpose, and being in excess of what it would have cost the defendant Parrot Silver & Copper Company to have extracted, concentrated, and refined the same."

It will be seen from an examination of this prayer, although somewhat involved and confusing, that special relief is asked against the Amalgamated Company. The naming of the officers, directors, and trustees of said company does not change the effect of the prayer. They are named in their official capacity. The last prayer in the bill is as follows:

"That all of the defendants be required to account for any moneys received by them, or by any of them, from the said defendant Parrot Silver & Copper Company, in connection with any of the matters and things set forth in said complaint, and for such other and further relief as to the court may seem just and equitable."

Looking to the allegations in the bill, and it is evident that the accounting here sought is against the said Amalgamated Company alone. There are no allegations that all of the defendants jointly obtained any property of the Parrot Company. The ore and machinery for which an accounting might be made was received, if at all, by said Amalgamated Company and the Anaconda Company; and the Anaconda Company, as before stated, is not a party to the suit. Under these circumstances it has been held that there is, in this matter of accounting, a separable controversy presented. Railroad Co. v. Zeigler, 39 C. C. A. 431, 99 Fed. 121; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514. Undoubtedly, the bill was drawn in this case with a view to excluding the claim that it presented a separable controversy as to the Amalgamated Company. A court, how-

ever, should view the matters presented in the bill, and see if the joining of some of the parties is merely colorable, and as to whether, considering the allegations in the bill, any relief could be obtained as against such colorable parties. If not, they become only what is termed "nominal parties," and the joining of them in no way should affect the jurisdiction of the court. In the joining of the officers and agents of the Amalgamated Company or those of the Parrot Company, the complainants could not have expected any relief against them, considering the scope of the bill. Such parties would be presumed to act for and in behalf of their company, and no individual relief could be obtained against them.

The motion to remand this cause to the state court is overruled.