## No. 9368.

HARRY LOTT AND WIFE VS. THE NEW ORLEANS CITY AND LAKE RAIL ROAD COMPANY.

The driver of a feed car, running on one of the streets of the city, allowed boys to ride by his sides on the platform, fare free. On their getting troublesome, he ordered them to get off, slackening his car to a mule walk, without touching, throwing off or threatening either. One pushed another, who, losing his balance, fell, slipping under and being crushed by the vehicle, death ensuing later.

Under such circumstances, the company cannot be held liable. The injury was not the natural and probable result of the driver's orders, and such an occurrence as he might and ought to have reasonably foreseen. It was the consequence of one for whose acts the company is not responsible, and who, like the injured party, was an intruder on the car.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

———

L. L. Levy and W. W. Handlin for Plaintiffs and Appellants.

Braughn, Buck & Dinkelspiel and W. O. Hart for Defendant and Appellee.

———

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The plaintiffs appeal from a judgment rejecting their demand in damages, for injuries sustained by their minor son, who was run over by one of the defendants' cars, and who died in consequence, the same day.   The accident is charged to have occurred by the gross negligence of the driver.

The record shows that, on the morning of September 12, 1882, at about nine o'clock, a *feed* car belonging to the company, in charge of a driver was coming down Magazine street in this city, when three boys, two of whom had been in the habit of doing so, jumped on the platform in front, taking positions, one, Martin, on the right and the other two, Lott and Babe, on the left of the driver.

They commenced "*skylarking*" and became so troublesome that the driver cautioned them to keep quiet.   They stopped a while, but began anew, when slowing up the car, the driver told them to get off, since they would not behave themselves, using neither threat nor force.

The car was going slow, the mule was on a walk.

The boy Babe, who was on the left side, nearer the driver and on the right of Lott or Harry, who, himself, was standing on the extreme of the platform, then told him, "*Hurry up, hurry up, get off Harry,*" giving him a push.

22

Losing his balance under the shove, Harry grabbed the staunclieon, but imperfectly. Letting it go, he fell, slipping on the side of the car, part of his body getting under and being run over by the vehicle.

Bruised and mangled, the boy was taken up and carried to his home where, after much suffering and lingering, he died some nine hours later the same day.

It appears that Lott and Martin were good boys, smart and active. They were pets of the driver, who occasionally allowed them to jump and ride on his car, the *feed* car, for he seems to have driven no other.

They were so alert and experienced that sometimes they would jump on and off the platform before the driver would know anything about it. Lott was about eleven years old and a newsboy.

The fact that he was pushed by Babe is established by his own declarations made on his bed of suffering, by the testimony of Martin, his friend; by that of Sullivan the driver, and somewhat by that of Babe himself, the reckless companion.

There is nothing to show that the driver touched, threw off, or threatened the boy, or that he was asked to stop fully, or that he had any reasonable ground to believe, when he told the boys to get off, that any of them would be injured in doing so.

The only thing the driver did was to tell them to get off. It was to enable them to do so securely, that he slackened his car to a mule walk.

It is highly probable that, had he been asked to stop, the driver would have done so. The fact is, that the boys did not ask him to stop and did not wait till he had stopped altogether. Martin jumped on one side, Babe pushed Lott or Harry and jumped on the other; Harry fell, was hurt and died. Had he not been pushed, he would have jumped, as his friends did and he would have been no more hurt than they were.

It is manifest that the company never designed the platform on the *feed* car to be used for the transportation of passengers; that when it entrusted Sullivan with the driving of the car, it gave him only the authority necessary to take it from one place to another; that they did not give him the power of admitting passengers on it; that it was patent that the car was not one for passengers, from its form and structure, which was that of a large box with no side openings and no inside seat; that permission by the driver to persons to ride on the platform was unwarranted; that those who thus got on and rode with him were intruders, as concerned the company, and thus primarily at fault.

---

Lott vs. Railroad Company.

---

It is likewise apparent that the boy Harry fell and was hurt, not because the driver ordered all the boys off, or had not stopped, but because when he was about getting off, he was pushed by his companion Babe, who like him, was also an intruder.

Had Harry not been pushed, it is indubitable that he would have got off unhurt, not only because he was smart, active, alert, expert at it, as all newsboys notoriously are,—but because the car had almost stopped. His companions got off unhurt.

Considering the age of the boy—eleven years—his experience, his occupation, his known agility, we think he was well able to take proper care of himself and can be held to the same accountability as a person of full discretion might be under similar circumstances.

The rules which govern as to *mere* children do not apply to minors who have attained to years of discretion. Sherman vs. Redfield, pp. 55–56; 33 N. Y. 642, McMahon vs. Mayor.

In order to hold the company liable, it must appear that the injury was occasioned by the negligence of the driver in the exercise of the functions in which he was employed; that it was the natural and probable result of the conductor's order, such a consequence as he might and ought to have reasonably foreseen at the time; that he had done or omitted an act which was something contemplated by his employment and which, if done or omitted lawfully, would have been done or omitted in his employer's name.

Haag vs. R. R. C., 4 Norris 85 Penn. St. 293; Cawley · vs. Pittsburg R. W. Co., 98 Penn. St. 500; Weeks on. Dam. absq. inj., 10, 120, 123, 127, 266–7; Wharton on Negl., 300, 301; Thompson on Carriers, p. 344–5; Pearce on Railroads 336; Spooner vs. Brooklyn City R. R. C.; Am. Law Reg., N. S. 1, 572, also p. 631; the Hearn case, 34 Ann. 160; the Montford case, 36 Ann. 750; the Gallaher case, 37 Ann. p.——; also the Wood case, 34 Ann. 1086; also the McNeil case, unreported, (O. B. 57 fo. 689 ); also Duff vs. Alleghany Valley R. R. Co., 91 Penn. 458; also Citizens' R. R. C. vs. Carey, 56 Ind. 396.

We have considered the authorities to which plaintiffs' counsel confidently refers.

That of Wilton, 107 Mass. 108–110, is a ruling in the case of a girl nine years old riding, without pay, by invitation of a driver on the platform of a street railroad horse passenger car, who, by the sudden start, lost her balance, ordering the driver to stop, the car keeping on. She fell, her arm was run over and had to be amputated.

The other case (Pennsylvania R. R. Co., 31 Penn. 372, 7 Casey) is that of a lad nine years old sent on an errand by his father, who finding a crossing obstructed by a train of cars, attempted to creep under them, when the train started and injured one of his feet, which it became necessary to amputate.

The facts in the two cases are absolutely dissimilar to those in the present controversy. The principles announced in both are simply, *that*, if a passenger, riding with due care on the platform of a passenger horse car of a street railroad corporation, not as a passenger for hire, but by invitation of the driver and without collusion with him to defraud the corporation, is injured through his negligence in driving the car, the corporation is liable ; and *that* a child of tender years is not to be held to the same rule of care and diligence in avoiding consequences of the negligence or unlawful acts of others, which is required of persons of full age and capacity.

The third case to which plaintiffs refer (24 Smith 424) is one in which a little girl *five* years old was allowed to ride on the platform of a street passenger car and who was hurt in attempting to get off, notwithstanding the driver's remonstrance. Pittsburg P. R. W. Co. vs. Caldwell, 74 Penn. St. 421.

The court held it was negligence in the driver to allow children *so young* to ride on the platform, and the company was liable.

Conceding to those authorities all the weight which is claimed for them, it is clear that they are inapplicable to the present case, in which the facts proved are quite different, although kindred principles may be involved and receive application.

The ruling invoked in the Wardle case, 34 Ann. 204, has no bearing on the issues here presented.

The district judge correctly viewed the facts and the law and properly relieved the company.

Judgment affirmed with costs.